[Cite as *In re B.R.*, 2021-Ohio-3150.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTERS OF:

    B.R. n/k/a B.S.

    And

    E.R. n/k/a/ E.S.

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Earle E. Wise, Jr., J.

Case Nos. 21CA000010 and
21CA000011

O P I N I O N

CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas,
Juvenile Division, Case Nos. 219 2081 and
219 2082

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     September 13, 2021

APPEARANCES:

For Appellee DJFS

ASHLEY L. JOHNS
KNOX COUNTY DJFS
117 East High Street
Mount Vernon, Ohio 43050

For Appellant Father

DEVIN M. TRAINER
KNOX COUNTY PUBLIC DEFENDER
110 East High Street
Mount Vernon, Ohio 43050

*Wise, John, J.*

{¶1}   Appellant-Father Robert Schaade appeals the March 22, 2021, decision of the Knox County Court of Common Pleas, Juvenile Division, terminating parental rights and granting permanent custody of the minor children B.S. and E.S. to Knox County Department of Job and Family Services.

{¶2}   This case comes to us on the expedited calendar and shall be considered in compliance with App.R. 11.2(C).

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶3}   The relevant facts leading to this appeal are as follows.

{¶4}   Appellant-Father Robert Schaade and Mother Heaven Rhoades are the biological parents of B.R. nka B.S. (DOB 3/17/2019) and E.R. nka E.S. (DOB 3/17/2019).

{¶5}   On June 28, 2019, Appellee Knox County Department of Job and Family Services, Children Services Division (KCDJFS) received a report that the minor children could not safely be discharged from Nationwide Children's Hospital to the parents. The minor children had been hospitalized since their birth in March, 2019. B.R. was to be discharged on July 5, 2019, and E.R. was to be discharged within the next week. At the time, neither parent had seen the minor children for approximately two weeks and had not had any contact with the hospital to discuss the status of the children or their needs upon release. The minor children were to be released on oxygen, and Mother could not continue smoking while the children received this treatment. Appellant-Father was incarcerated for domestic violence against Mother. KCDJFS had observed Mother visibly intoxicated and received reports for concerns of drug use by Mother, who declined to submit to a drug screen.

**{¶6}** On July 5, 2019, Appellee KCDJFS obtained an *Ex Parte* Order placing the minor children in the temporary custody and shelter care of the Agency. The *Ex Parte* Order was issued based upon domestic violence perpetrated by Appellant-Father, drug use by Mother, the parents' lack of contact with the children while at Nationwide Children's Hospital, and the safety concerns presented by discharging these special needs children to those conditions. At birth, the minor children were hospitalized for significant medical conditions that require specialized care. (T. at 27-29). B.R. nka B.S. is diagnosed with cerebral palsy, retinopathy, bronchopulmonary disease, and developmental delays. (T. at 27-28). E.R. nka E.S. is diagnosed with retinopathy, bronchopulmonary disease, developmental delays, and an issue with the functioning of her right leg. (T. at 28).

**{¶7}** On July 8, 2019, KCDJFS filed Complaints alleging that the minor children were Neglected pursuant to R.C. §2151.04(A)(2)(3) and Dependent pursuant to R.C. §2151.03(B)(C).

**{¶8}** On July 8, 2019, the trial court held a Shelter Care Hearing and continued the Order of Temporary Custody of the minor children to KCDJFS.

**{¶9}** On July 23, 2019, a Preliminary Hearing was held.

**{¶10}** On August 8, 2019, an Adjudication Hearing was held, wherein the trial court found all allegations in the Complaint proven by clear and convincing evidence. The children were found to be Neglected (R.C. §2151.04(A)(2)(3)) and Dependent (R.C. §2151.03(B)(C)).

**{¶11}** On September 16, 2019, a Dispositional Hearing was held, at which time the trial court continued temporary custody of the minor children to KCDJFS.

**{¶12}**   Review Hearings were held in this matter on January 8, 2020, June 24, 2020, and December 17, 2020, and the trial court continued temporary custody of the minor children to KCDJFS at each hearing.

**{¶13}**   On December 17, 2020, KCDJFS filed a Motion for Permanent Custody.

**{¶14}**   On February 22, 2021, a hearing was held on the Motion for Permanent Custody. Present at the hearing were Appellant-Father R.S. appearing with counsel; Caseworker Deanne Bobo of the Knox County Department of Job and Family Services, appearing with counsel; Guardian ad Litem Attorney Mary Ellen Fulk; foster parents Elisha and Lawrence Luciers; and, Kara Ross of Riverside Recovery. Mother Heaven Rhoades failed to appear despite receiving notice of the hearing.

**{¶15}**   At the hearing, KCDJFS first presented the testimony of Ms. Bobo, the current case worker. Ms. Bobo stated that the initial concerns related to the children included domestic violence in the home and the failure of both parents to visit the minor children while they remained in the hospital after their premature births on March 17, 2019. KCDJFS obtained temporary custody of both children on July 8, 2019, when the children were released from the hospital and has maintained custody since that time. Mother has made no progress toward her case plan requirements during the case. She attended only two visits and met with the current case worker one time since the case worker took over the case in September 2020. During 2020, Mother faced charges for drug paraphernalia and had two warrants out for her arrest. When she met with Ms. Bobo on January 70, 2021, Mother tested positive for methamphetamine and amphetamine. She is currently facing a possession of drug abuse instruments charge. During her minimal contact with her children during her visits, Mother often became very emotional

and could not cope with the medical equipment necessary to provide oxygen for the children. Ms. Bobo testified that the children are not bonded with Mother.

{¶16}   As to Appellant-Father, Caseworker Bobo stated that he regularly attended his weekly visits with his children, and even visited during the time allotted to Mother when she did not come for her visits. She stated that he is bonded with his children and interacts well with them. He was able to manage the children and their medical equipment when they needed oxygen. During 2020, Appellant-Father successfully completed a rehabilitation program. Following his release, however, he lost his job and relapsed. Ms. Bobo stated that Appellant-Father regularly struggled with alcohol and drug use. At the time of the hearing, Appellant-Father had resided at the inpatient Riverside Recovery men's rehabilitation house for about a month and a half. Appellant-Father completed a parenting class and the Hands Down program. He is currently in MERIT court and has no probation violations. Despite some progress, Ms. Bobo opined that Appellant-Father cannot care full-time for his children.

{¶17}   KCDJFS communicated with at least two possible kinship placements for the girls, but all of the possible placements voluntarily withdrew from consideration for custody.

{¶18}   Appellant-Father testified that he has struggled with alcohol and marijuana addiction. He also used methamphetamines as recently as fall of 2020. He successfully finished a three-month program of rehabilitation in April, 2020. He then obtained employment and worked until October, 2020, when his employer shut down unexpectedly. Following that shut down, Appellant-Father relapsed. He entered his current treatment program in January, 2021, and expects to complete the program around

July, 2021. Once he is released, he plans to obtain employment and obtain his own housing. Appellant-Father admitted that he did not permit anyone from KCDJFS to visit the residence where he lived with his cousin during 2020. He indicated that he knew the residence was not appropriate for his girls. Appellant-Father began mental health counseling prior to entering the inpatient rehabilitation program with Riverside Recovery, and has continued mental health counseling in that program. Appellant-Father attended his scheduled visitations with the girls and always hoped for more visitation. He is aware that both girls have medical issues but is not aware of the details concerning ongoing care or treatment for those issues. He admitted that he is not able to care for the girls at the present time, but would like additional time to finish his program and find suitable housing. Appellant-Father agreed that his girls are happy in their current foster care placement.

{¶19} The foster mother for both children testified that they moved into her home in July, 2019. The girls are well bonded with the family members in the home. Both girls have retinopathy in both eyes, bronchopulmonary disease, and developmental delays. The retinopathy appears to be resolving and both girls receive ongoing care for their bronchopulmonary disease, including regular use of inhalers and periodic medical appointments. B.S. also has cerebral palsy that affects her right side. She does daily exercises with the family to maintain mobility in her legs. E.S. struggles some with her right leg and is currently in physical therapy. She may have cerebral palsy but has not been diagnosed. Both girls are more susceptible to illnesses involving the lungs, and the family must take additional precautionary measures in the home to help prevent the

spread of illness. Despite their health concerns, both girls are healthy and happy in the home.

{¶20} The foster mother recalled that the children were somewhat tentative during visits with Appellant-Father, but that he worked to keep their attention and engage them.

{¶21} Appellant-Father's counselor testified that he is making good progress in the Riverside Recovery program and will be transitioning to a lower level of care due to that progress. Appellant-Father lives at the men's recovery home, attends individual counseling two times per week, group sessions twenty-one hours per week, and NNAA meetings five to seven times per week. She believes that Appellant-Father has been open and honest about his addiction and genuinely wants to address his issues.

{¶22} The Guardian ad Litem recognized the progress made by Appellant-Father, but recommended a grant of permanent custody of both girls as being in their best interest.

{¶23} By Judgment Entry journalized on March 22, 2021, the trial court granted Permanent Custody of the minor children to KCDJFS.

{¶24} Appellant-Father now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

{¶25} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶26} "II. THE COURT ERRED IN ALLOWING THE MOTION TO PROCEED OR GRANTING THE MOTION DUE TO LACK OF REASONABLE EFFORTS."

**I.**

**{¶27}** In his first assignment of error, Appellant-Father challenges the trial court's order terminating parental rights and granting permanent custody of the minor children to the Agency. Appellant specifically challenges the trial court's findings that the children could not and should not be placed with father within a reasonable time, and that it was in the childrens' best interest for permanent custody to be granted.

**{¶28}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. §2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶29}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997–Ohio–260, 674 N.E.2d 1159.

<u>Requirements for Permanent Custody Awards</u>

**{¶30}**   R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶31}**   Following the hearing, R.C. §2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶32}  Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶33}  In the case *sub judice*, the trial court found that R.C. §2151.414(B)(1)(d) applied because the minor children had been in the custody of KCDJFS for longer than twelve (12) of the last twenty-two (22) consecutive months. Pursuant to R.C. §2151.414(B)(1)(a), the trial court also found the children could not be placed with either of the parents within a reasonable time or should not be placed with the childrens' parents.

{¶34} In making this decision, the trial court must consider the factors of R.C. §2151.414(E), which states, in relevant part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

****

(16) Any other factor the court considers relevant.

**{¶35}** In determining whether the children can be placed with either parent within a reasonable time, the court stated that it had considered all relevant evidence and all factors specifically enumerated in R.C. §2151.414(E). Based on the testimony presented,

the trial court found that the minor children had been in the temporary custody of KCDJFS for more than twelve months out of a consecutive twenty-two-month period.

{¶36}  The trial court then further found that efforts made by KCDJFS to work with the family and the minor children had been reasonable and appropriate and were consistent with the minor children's best interest. KCDJFS had used reasonable efforts to prevent the removal of the minor children from the home, to remedy the conditions that led to removal of the minor children, and to make it possible for the minor children to return home. Specifically, the trial court found these reasonable efforts based on the following actions taken by KCDJFS: facilitation of visitation with Father; foster placement; and case planning.

### Best Interest

{¶37}  We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶38}  In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶39} No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

{¶40} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.

{¶41} The trial court's decision indicates it then considered the best interest factors. The trial court concluded the children's need for legally secure placement could

not be achieved without awarding permanent custody to the Agency. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest.

{¶42} The children were born with significant medical issues which required them to stay in the hospital for approximately their first four to five months. While in the hospital, the parents went at least two weeks without visiting the children or inquiring as to their condition. Upon release from the hospital, the children were taken directly into foster care. The children have been in the custody of KCDJFS for approximately 17 months, and no legally secure permanent placement with a suitable relative is available. (T. at 5-6). The children have been placed together with a foster family where they are doing well and are bonded to their foster family. *Id.* The children both have significant medical issues, as set forth in more detail above, and have been receiving specialized medical treatment while in foster care. (T. at 27-29).

{¶43} Both Appellant-Father and Mother have drug and/or alcohol addictions. Mother abandoned the children and Appellant-Father has been and currently is unable to provide stability for the children. (T. at 6-7, 9-10, 16-17). Appellant-Father was in an inpatient treatment facility from January, 2020, through April, 2020. (T. at 15-16). He then used methamphetamine and relapsed in November, 2020, returning to inpatient treatment in January, 2021. *Id.* He was not scheduled to be released from the residential treatment facility where he was currently residing until July, 2021, and then would require additional time to obtain appropriate, stable housing. (T. at 16).

**{¶44}** The GAL recommended permanent custody be granted to the Agency because the children could not be safely reunited with the parents and have developed bonds in current care.

**{¶45}** For the reasons set forth above, we find that the trial court's determination that permanent custody to the Agency was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶46}** Appellant-Father's first assignment of error is overruled.

**II.**

**{¶47}** In his second assignment of error, Appellant argues that the Agency did not use reasonable efforts to prevent the removal, and that the motion for permanent custody should have been denied as not ripe. We disagree.

**{¶48}** First, the Ohio Supreme Court has held the trial court is not obligated by R.C. §2151.419 to make a determination that the Agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *see also* R.C. §2151.419. The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *In the Matter of L.J.*, 5th Dist.

Licking No. 2019 CA 0079, 2019-Ohio-5231. In this case, the trial court previously made findings of reasonable efforts on July 8, 2019, at the Shelter Care Hearing.

**{¶49}** Further, we find there is competent and credible evidence to confirm that KCDJFS made reasonable efforts to assist Appellant-Father in eliminating the need for the continued removal of the children. Caseworker Bobo testified regarding efforts made by the Agency during its seventeen (17) month involvement with the family.

**{¶50}** The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstance of the case. *In the Matter of J.H.*, 5th Dist. Guernsey No. 19CA000025, 2019-Ohio-5184; *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458.; *Matter of S.L.*, 5th Dist. Stark No. 2021 CA 00027, 2021-Ohio-2377, ¶¶ 40-42

**{¶51}** Appellant-Father's second assignment of error is overruled.

**{¶52}** The decision of the Court or Common Pleas, Juvenile Division, Knox County, Ohio, is affirmed.

By: Wise, John, J.

Gwin, P. J., and

Wise, Earle, J., concur.

JWW/kw 0908